Richards, J.
Clinton A. Mauk was the owner of a large quantity of lumber, and the operator of a lumber yard, all situated in the northerly part of the city of Toledo, most of the lumber being in two large sheds owned by the Ann Arbor Railroad Company, and a portion being in another shed owned by Mr. Mauk. These sheds were located near various switching tracks of The Toledo Terminal Railroad Company and other switching tracks of the Ann Arbor Railroad Company. The property was destroyed by fire on the night of October 15, 1916, the fire resulting in nearly a total loss. The property owned by Mr. Mauk was insured in several insurance companies to the amount of $38,000, and this amount was paid by these companies to him. Thereupon Mr. Mauk and the nine insurance companies united as plaintiffs in an action against The Toledo Terminal Railroad Company to recover the value of the property destroyed by fire, the insurance companies •claiming to be subrogated to the rights of Mr. *440 Mauk .to the extent of the sums paid by them severally. The petition was met by a motion to separately state and number the causes of action and to make more certain and definite, which motion was overruled by the co.ur-t. Thereupon the defendant filed a demurrer to the petition on the grounds of a misjoinder of parties plaintiff, and for the reason that several causes of action were improperly joined, and for want of facts. This demurrer was overruled and an answer filed by the defendant. A trial of the case resulted in a. verdict and judgment being rendered in favor of the plaintiffs in the amount of $70,000. We are asked to reverse this judgment for various reasons, but chiefly because it is claimed that the court erred in overruling the motion and demurrer, because the judgment is not sustained by sufficient evidence, and because the court erred in the admission and exclusion of evidence and in the charge to the. jury.
We have no difficulty in reaching the conclusion that the petition sets forth but one cause of a'ction and that the same is set out with sufficient certainty. There was but one fire pleaded, and that -is averred to have been caused by sparks emitted from an engine of the railroad company. The cause of action was based on a single wrongful act. The owner of the property was, of course, the primary sufferer by reason of -the fire, and no doubt can exist but that the insurance companies upon making payment under, the policies issued by them became subrogated to the rights of the assured to the extent of the payments so made. The averments of the petition show that the loss *441 largely exceeded the amount of the insurance, and' it is therefore clear that not only the owner but the insurance companies were interested in maintaining a suit against the defendant.
While there are some differences in detail between this case an'd the case -of The L. E. & W. Rd. Co. v. Falk and The Phoenix Insurance Company, 62 Ohio St., 297, and while there has been some change in the statute since the announcement of that decision, yet the principles therein set forth indicate very clearly the rules «which should govern in the case at bar. It is claimed that under the statute, as it now reads, Section 8970, General Code, the railroad company is liable to the owner of the property absolutely, but that the liability to the insurance company arises only on averments and proof of negligence on the part of thé railroad company. It is true that the statute cited provides that- the company shall be liable for all loss or damage by fires originating on adjacent lands, caused in whole or in part by sparks from an engine passing over such railroad, and the exercise by such company, or receiver of' such company, of due care in equipping and operating such engine shall not exempt sufch company, or receiver of such company, from liability. This statute does create as against the railroad company an absolute liability, on evidence showing that the fire originated from sparks from an engine passing over its railroad; but when an insurance company, having a policy upon property destroyed by fire from sparks coming from an engine passing over a railroad adjoining the property, has made payment under its policy, it is by general principles of *442 equity subrogated to the rights of the assured and that subrogation is to all the rights of the assured as against the railroad company to the extent of the amount paid by the insurance company. It would seem clear, therefore, that the statute inures to the benefit of the insurance company so making-payment as well as to the assured.
, Manifestly all thq rights given by the statute could be secured by the owner bringing- an action against the railroad company, which is claimed to have caused the fire, in which action, whether he had received the amount of the insurance on the property or not, he would be entitled, if the proof showed liability, to recover the full value of the property destroyed, and this would raise an equity in favor of the insurance companies against the assured in the fund received by him from the railroad company. Furthermore, a person whose property is insured, who suffers loss by reason of a fire, has a right to assign his cause of action, and the assignee would be entitled to all -the benefits conferred by the section of the General Code above cited; and, clearly, whatever rights could be acquired and enforced indirectly may be enforced directly in an action by the assured and the companies which have made payment under their policies. In truth, the action at bar is an action by the owner of the property to recover the full amount of the loss from the railroad company; and the fact that the insurance companies are united with him as coplaintiffs can in no manner prejudice the rights of the railroad company, but enables the court to adjust the equities of the plaintiffs among themselves.
*443 The rule is stated in 1 Clement on Fire Insurance, 369, as follows:
“When a statute or code of practice authorizes suit in name of real party in interest, and a number of insurance companies are subrogated as equitable assignees to rights of insured as against a railroad company, they may properly be joined as plaintiffs in an action against the latter to recover the loss or damage. If the insured has any interest or his whole loss was not paid by the insurance companies, he should be also joined as a party to the action, either as a plaintiff by his consent or as defendant if he refuses.”
We hold, in view of reason and authority, that the owner and the insurance companies which have made payment may unite in an action against the railroad company, where the total loss suffered exceeds the amount of the insurance on the property. It follows that the court committed no error in overruling the motion directed to the petition, nor in overruling the demurrer thereto.
A lárge mass of evidence was taken in this case bearing upon the manner in which the fire originated which caused the destruction of the property. The evidence shows that the fire originated in or near what is known as shed No. 1, one end of which was located within twenty-five or thirty feet of the tracks of the Terminal Railroad Company, and that the fire spread from this shed to the other two, resulting in the destruction of all of them. These sheds were constructed of lumber, and shed No. 1 had an open unboarded space about nine feet from the ground extending the entire distance around it.
*444 The fire started about midnight on the night of October 15.. It is in evidence that there had been no fires in these sheds during that fall, and, although there was a stove in one of them, that no fire had been built therein since the preceding spring. Shortly before twelve o’clock on the night in question a switching engine belonging to the Terminal Railroad company passed back and forth by this property several times, part of 'the time hauling a train of cars and part of the time without any load The engine was observed by a watchman, located in the vicinity, who testifies that when loaded the engine continually threw sparks; that he observed it on that night and 'had on numerous occasions prior to that time; and that the terminal engines all threw sparks when “working heavy and exhausting.”
The evidence shows beyond question that the wind on that night was blowing ¡at- the rate of fourteen to fifteen miles per hour and in the general direction from the terminal tracks toward these lumber sheds. The evidence disclos'es that the Ann Arbor Railroad Company had no engine in operation during that day or night in this neighborhood except a passenger engine which traveled along the main track, many hundreds of feet distant from the shed in which the fire originated, which engine passed some hours before the fire was seen. There is no evidence in the record showing any fires in that neighborhood during the day or night of the 15th of October except the sparks flying from the engine of the Terminal Railroad company. It also appears that an employe visited the yards at four o’clock on the after *445 noon before the fire and found the buildings locked. We have no hesitancy in reaching the conclusion that the jury was entirely justified in finding that the fire originated from sparks coming from this engine. Indeed, we do not see how they could have reached any other result from the evidence contained in the record.
In the case of L. S. & M. S. Ry. Co. v. Anderson, 17 C. D., 577, the circuit court held that a jury is warranted in finding that a fire originating on land adjacent to the railroad company’s right of way was started by sparks emitted from locomotives when the evidence shows that it originated very quickly after two locomotives had passed along, that the day was windy, with the wind blowing from the railroad toward plaintiff’s land, and of sufficient force to carry sparks thereon, and that there were no other fires in the particular neighborhood at the time. All of the requirements mentioned by the court uTthat case exist in the •case at bar, and we are not, therefore, able to say that the verdict is not sustained by sufficient evidence.
It is said, however, that the verdict against the railroad company was produced because the court permitted the plaintiffs to introduce certain incompetent evidence and excluded from the jury certain competent evidence offered on behalf of the company. The evidence which the court allowed to be introduced, and ag'ainst which objection is especially made, related to the engines of the Terminal Railroad company throwing sparks on other occasions within two or three weeks prior to the time of this fire. In view of the fact that the *446 particular engine which passed along this track on that night was identified, we see no necessity for the plaintiff to introduce evidence that was ¡broad enough to include any other engine than that one; but the evidence which was introduced did, in fact, include engine number seven, which was the one that passed the sheds on the occasion, and we can see no prejudice resulting to the railroad company by the inclusion of evidence showing that other engines of the company also emitted sparks.
The courts have frequently indicated that in an action brought by a landowner to recover for" destruction of his property by fire claimed to have been caused by sparks from passing engines considerable latitude should be allowed because of the usual inability of the plaintiff to specifically show the particular circumstances existing which caused the fire. This principle is stated in The Lakeside & Marblehead Rd. Co. v. Kelly, 6 C. D., 555, and was recognized by this court in The Hocking Valley Ry. Co. v. James, Trustee, 1 Ohio App., 335. The case of The Hanover Insurance Co. et al. v. • C., H. & D. Ry. Co., 2 Ohio App., 136, decided by this court, contains nothing inconsistent with what has just been stated: In that case, as in this, we recognize that there should be either direct proof of facts establishing the plaintiff’s case, or proof of 'facts from which liability may be reasonably presumed, and that there can be no guessing by either court or jury.
The trial court excluded evidence of the results of certain experiments made by expert witnesses, called by the railroad company, to establish that' *447 certain substances placed along the right of way would not take fire from sparks emitted from passing engines. An examination of the evidence and offers to prove contained in the bill of exceptions shows that the experiments sought to be proven were not made under conditions sufficiently similar to those existing at the location of this fire and at the time of its occurrence to render the results of the experiments competent evidence. The inherent difficulty of reproducing conditions similar to those existing at the time and place of the fire made it practically impossible to render experiments of value to the jury in ascertaining whether the property of Mr. Mauk was set on fire by sparks from the railroad company’s engine. It is said in 3 Jones on Evidence (1913 eel.), Section 410, that testimony ought not to be received as to experiments unless it shows they were made under such conditions as to fairly illustrate the point in issue; and that from the nature of the case the decision of this question must rest largely in the discretion of the trial judge. We find no prejudicial error in excluding evidence of the results of experiments made by these witnesses.
The railroad company sought to offer evidence that the lumber yards of Mr. Mauk had been, before the occasion of the fire, frequented by tramps and loafers and that fires 'had been seen in the yards on various occasions. This evidence was excluded by the trial, court and is assigned as error. It must he noted that the trial judge did not exclude evidence as to whether any person had been in or about the yards or buildings on the day or night when the property was destroyed by fire. *448 On the contrary, the trial judge allowed evidence concerning some unknown man passing along a path through the Mauk lumber yards at about the hour of eleven o’clock on the night of October 15. The evidence which was excluded related to times prior to the day of the fire, and no offer was made to show the existence of any fire in or adjacent to the yards on October 15, or of tramps or other persons being in or about the same on that day. Furthermore, the railroad company did not offer to show the character or extent of any fire which had been theretofore seen in the lumber yards, nor that the same was caused by any improper person; for aught that appears in the questions and offers to prove, the fires which were seen may have been started by Mr. Mauk himself, or his employes, in cleaning up the lumber yards, and may have been, and doubtless were, entirely under control. If all the evidence which was offered by the railroad company on this branch of the case had been received, it would only have shown that on prior occasions tramps and loafers had been seen in the lumber yards and that fires had been seen there prior to the 15th of October, and from this evidence the jury could only have been asked to guess that the fire which destroyed the property might have originated from tramps or loafers starting fires on the premises. We think such evidence would not tend to show that the fire which originated on the night of October 15 was caused in that manner. A test of the admissibility of such evidence may be made by applying the rule to the plaintiffs in the trial court, by assuming that plaintiffs were able to show only that engines of the *449 railroad company were accustomed to emit sparks when hauling loads through these yards and on these switch tracks without ¡being able to show that any engine had passed along the track near these yards on that day or evening. In such event the plaintiffs manifestly would have fallen far short of making a case, and the jury could have only rendered a verdict in favor of the plaintiffs on such a showing by guessing as to the origin of the fire. For all these reasons we find that the trial court committed no error in excluding the '.class of evidence mentioned.
The defendant railroad company introduced evidence showing that the engine crew of the railroad •company, after observing the fire, rode on the engine to the vicinity of the fire, and the court ■permitted them to describe the conditions that they found existing at the time of their arrival, but •excluded evidence of the purpose for which they had come. The offer made shows that the company desired to prove that they had come to the fire 'with apparatus attached to their engine for the purpose of aiding in extinguishing the fire, but were unable to use the same because the fire was then in the end of the shed most distant from the railroad tracks. The trial court committed no prejudicial error in excluding the purpose which the engine crew had in mind in going to the fire, for that purpose could not.aid the jury in ascertaining the liability or nonliability of the railroad company. The particular location of the fire was permitted to be shown by all witnesses who had knowledge of the same. It is not controverted that the shed in or near which the fire originated was *450 . three hundred and fifty feet in length, and if the fire was, as claimed 'by the railroad company, in the farther end of the shed,, it, of course, could not have been reached by the- hose attached to the locomotive engine; and the purpose of the engine crew was immaterial.
Finding no prejudicial error, the judgment will be affirmed.

Judgment affirmed.

Chittenden and Kinicade, JJ., concur.