JONES v. THE STATE OF OHIO.

*Misconduct of counsel — Argument to jury — Record insufficient for review, when — Comment by prosecutor on guilt of accused — Verdict — Recommendation of mercy surplusage, when — Criminal law.*

1. A reviewing court will not undertake to determine whether or not remarks made by counsel in argument to the jury constituted misconduct, unless the statements complained of are brought into the record *as made* and not "in substance" only; and the record must further show that the attention of the trial court was challenged by an objection made at the time and an exception entered to the action of the trial court with reference thereto.

2. While a prosecuting attorney should protect the innocent as well as seek the punishment of the guilty, he is not thereby barred from properly expressing in argument to the jury his honest conviction as to the conclusion which should be drawn from the evidence, but on the contrary it is his duty to be vigilant in urging an orderly administration of justice.

3. Use by a prosecuting attorney in his argument to the jury of the words, "I say to you that the defendant is guilty, and I believe we have proven him guilty, and I am willing to bear my part of the responsibility whatever the verdict may be," does not constitute misconduct, but is in effect an expression of opinion that the prosecutor believes, subject to the action of the jury, that the defendant is guilty as shown by the testimony.

4. A verdict returned by a jury in a criminal case containing a recommendation of mercy, except in a first degree murder case, is to be treated as surplusage when such verdict is responsive to the charge in the indictment.

(Decided February 28, 1919.)

ERROR: Court of Appeals for Stark county.

*Messrs. Amerman & Mills; Messrs. Webber & Turner* and *Mr. S. F. Bowman,* for plaintiff in error.

*Mr. W. S. Ruff,* prosecuting attorney, and *Mr. T. H. Leahy,* for defendant in error.

SHIELDS, J. At the May, 1918, term of the court of common pleas of Stark county the plaintiff in error was indicted for procuring a miscarriage upon the body of Maybelle Henderson, a pregnant woman, in violation of Section 12412, General Code. A motion to quash the indictment being overruled, trial was had, resulting in the conviction of the plaintiff in error, who was sentenced according to law. A petition in error was filed in this court, alleging numerous grounds of error for the reversal of the judgment of conviction and sentence. In considering the grounds of error we will take them up in the order in which they appear in the petition in error.

1. The first ground alleged was that the court erred in overruling the motion to quash the indictment. The motion to quash was based upon the ground that "said indictment is uncertain and repugnant and defective in the following to-wit: 'that the said Maybelle Henderson on or about the

17th day of April in the year of our Lord one thousand nine hundred and eighteen, in said county, miscarried and was prematurely delivered.' " It clearly appears that the language here quoted from said indictment is to be read in connection with what immediately precedes it, and when so read it is apparent that the objection made is without merit and is therefore not well taken.

2. The second ground alleged is that "the court erred in overruling the demurrer." We find no demurrer among the files in this case, nor does the transcript as prepared and filed by the clerk show that any demurrer was passed on by the court below, nor does it show that a demurrer was filed.

3. The third ground alleged is that "the court erred in not declaring a mistrial on account of the misconduct of the prosecutor." On page 289 of the bill of exceptions it appears that objection was made on behalf of the defendant below to a certain statement alleged to have been made by Mr. Leahy, assistant prosecuting attorney, in his argument to the jury on behalf of the state, which it was claimed was improper and amounted to misconduct on the part of said counsel. Said statement was, in substance, "that in fact the defendant Charles C. Jones was implicated in the Verroun case which said case was tried some time ago in the common pleas court of Stark county." It appears that counsel for the defendant called the attention of the trial court to the remarks of counsel so made and requested the court to instruct the jury to disregard them, whereupon the court cautioned the jury that "Dr. Jones is not on trial for anything that transpired in the Verroun case," and, in substance, that

they should not be influenced by remarks of counsel based upon anything outside of the testimony. It likewise appears that the court stenographer was absent from the court room at the time said remark is alleged to have been made, and while counsel for the state denied it was made, as stated, the record recites that it was "in substance" so made. Remarks of counsel *as made* must be brought into the record to enable the court to correctly judge whether or not they constitute misconduct. But, aside from this, the record fails to show that any exception was taken to the statement alleged to have been made by the assistant prosecuting attorney in his argument to the jury, and it further fails to show that any exception was taken to the action of the trial judge, to lay the foundation for a review by an appellate court. The attention of the trial court should be challenged by an objection and exception taken at the time. *Davis et al.* v. *State,* 20 C. C., 430.

It is also argued on behalf of the plaintiff in error that the prosecuting attorney in his final argument to the jury was guilty of misconduct prejudicial to the rights of the plaintiff in error. On page 290 of the record the following appears:

"Defendant objects to statement of prosecuting attorney in argument to the effect:

" 'I say to you that the defendant is guilty and I believe we have proven him guilty. Then I am willing to bear my part of the responsibility whatever the verdict may be.'

"Objection overruled.

"Defendant excepts.

"Mr. Amerman asks the court to instruct the jury to disregard it.

"Court—Go ahead.

"Defendant excepts."

Legitimate argument is at all times permissible when based on the evidence in a case, and counsel are not precluded from properly urging their conclusions, deducible from the evidence, to the jury, who are the final judges of the facts. Of course this does not mean that counsel are privileged to reinforce their arguments to the jury by their own unsupported personal statements, or in urging their personal belief upon the jury without reference to proven facts, or by other matters extraneous to the inquiry before the jury, but fair and reasonable argument is and always has been regarded as being within the constitutional right of counsel.

As was said by Judge Davis in *Hayes* v. *Smith,* 62 Ohio St., 161, 186, "a generous latitude should be allowed to counsel; but the argument should always be decorous and should not impair the impartial administration of justice." The question then arises: Was the language used by the prosecuting attorney in argument to the jury such misconduct as violated the rights of the defendant below and deprived him of a fair trial? If so, then it is reversible error and a new trial should be awarded on this ground; otherwise it should be denied. It is to be borne in mind that a special obligation is laid upon the prosecuting attorney to "faithfully discharge all the duties enjoined upon him by law, among which is that he make diligent inquiry into all offenses committed within the county and to use every reasonable effort to bring

offenders against the law to justice," and in this connection it may not be too much to say it is the common observation of courts, and others as well, that in some classes of cases, at least, this requirement of public duty is beset with difficulties that render the administration of said trust not an easy one under all circumstances. However this may be, every person accused of crime is guaranteed a fair trial under the constitution and the law, and it should be the common aim of all concerned in the administration of the law to observe this humane provision. Quoting from the opinion of Judge Spear in *Miller* v. *State,* 73 Ohio St., 195, 205, respecting the duty of a prosecuting attorney:

"It is incumbent upon a prosecuting attorney to aid the administration of justice, and not to so conduct himself during a trial as to defeat the purpose of the law which accords to every person accused of crime a fair and impartial trial. And this is no less a duty where the prosecutor believes the offender guilty."

While the prosecuting attorney is a semi-judicial officer, presumed to be interested alike in the punishment of the guilty and the protection of the innocent, we do not understand it therefore follows that he is deprived of the privilege of properly expressing in argument his honest convictions upon the effect of evidence laid before a jury. He is not required to remain sphinxlike and witness the cause he officially represents lost through his failure to assert the rights of the state; but he owes it to the state to be vigilant to the end that in the orderly administration of justice the interests of the state may not be neglected, but properly looked after.

He may not always find the jury agreeing with
him, but the same instrument and the same law
which afford the humane and charitable presump-
tion of innocence of one charged with the crime are
the same instrument and the same law which af-
ford to counsel generally the right to be heard
before the courts, and especially is this the privi-
lege of the prosecuting attorney who is specially
charged by the law and by his oath to faithfully
represent the interests and welfare of the public.
Coming nearer to the question under discussion, it
is the opinion of this court that the prosecuting
attorney has a public duty to perform, and in its
proper and faithful performance lies the only hope
of security of the people in the enjoyment of their
rights. In the history of criminal trials it may be
and doubtless is true that there are instances
wherein the comments of the prosecuting officer of
a county are so flagrantly violative of propriety and
decorum as to require a verdict secured for the
state through such means to be set aside on a mo-
tion for a new trial because the accused was thereby
deprived of a fair trial; where a new trial was
granted and properly so; but let us inquire of the
conditions here. It does not clearly appear from
the bill of exceptions, in the light of the preceding
exception taken to the remarks alleged to have been
made in argument by the assistant prosecuting at-
torney, that the stenographer was present in court
and took, at the time they are alleged to have been
made, a note of the remarks made by the prosecut-
ing attorney in argument, as appears on page 290
of the record, but, assuming that they were made
as claimed on behalf of the plaintiff in error, what

was their effect? Was the effect prejudicial? In a civil case, *Ohio & Western Pennsylvania Dock Co.* v. *Trapnell,* 88 Ohio St., 516, 521, wherein misconduct of counsel, among other things, was charged during the trial, it was said by the court, when referring to side remarks of counsel in the hearing of the jury:

"Remarks of this kind are wholly improper in the trial of a case and it is the duty of the trial court to see that they are not made, or at least not persisted in, but something must be left to the discretion of a trial court, otherwise we would never reach an end to litigation, and a reviewing court ought not to reverse unless it clearly appears that such misconduct was of such character and so persistent as to prevent a fair trial of the cause. While this court will sustain a trial court in compelling counsel to properly conduct their cause and to refrain from all side remarks and unprofessional conduct either by directions to the jury to disregard these remarks and the punishment of counsel if they persist in offending, or by granting a new trial therefor, yet it will not reverse the judgment until it clearly appears that such conduct was prejudicial to the losing party."

Again, on page 520, the court, in above case, said:

"While this court agrees with counsel for plaintiff in error that this was misconduct on the part of counsel for the defendant in error, and that the same was reprehensible and wholly inexcusable, yet that fact does not necessarily make it prejudicial to defendant. Counsel in the trial of a case may be guilty of many acts of misconduct that would sub-

ject him to reprimand by the court, or even to punishment for contempt of court, and yet the act may not be prejudicial to the rights of either party to the cause, and in such case it would be highly improper to reverse for such reason."

It thus appears that the controlling question is: Did the remark imputed to the prosecuting attorney have an effect prejudicial to the legal rights of the plaintiff in error by way of depriving him of a fair trial? Counsel for plaintiff in error claim that it did, for which he is entitled to another trial, and in support of said claim we are cited to numerous authorities, among them the case of *Broznack* v. *State,* 109 Ga., 514, which was a criminal case, for cheating and swindling. One of the grounds complained of during the trial was that counsel employed to assist in the prosecution of the accused said in his argument to the jury:

"I would not appear in this case, if I did not believe the defendant to be as guilty as any man that was ever tried in the courthouse."

The trial court held this was "legitimate argument." Upon error it was reversed for reasons that are most obvious. Yet in this case the court, quoting from counsel's brief, say:

"Yet one may well argue, and he should, that the testimony has established his client's cause."

*Jackson* v. *State,* 116 Ind., 464, cited on behalf of the plaintiff in error, was an indictment for adultery, wherein the prosecuting attorney in his closing address to the jury used the following language:

"Washington Jackson's wife is broken-hearted over his conduct in connection with this woman. I

know what I am talking about. I have been to Greenfield, and heard the evidence before the grand jury, and I know what those people think about this case."

That this language was grossly improper, for the prosecuting attorney to go outside of the record and make said statement, no one will dispute. It was an expression of opinion founded on alleged information wholly outside of the record.

*Howard* v. *Commonwealth,* 110 Ky., 356, also cited on behalf of the plaintiff in error, was a first degree homicide case where the regular attorney for the commonwealth did not appear, but was represented by another, who in his closing address to the jury used the following language:

"I am commissioned by Robert Franklin [the commonwealth's attorney] to say to the jury that he is in thorough accord and sympathy with the prosecution, and that he thinks the defendant guilty, and hopes the jury will hang him higher than Haman."

It is unnecessary to say that the mere statement of this bravado declaration furnishes its own comment.

*People* v. *John Dane,* 59 Mich., 550, also cited on behalf of the plaintiff in error, was a prosecution for larceny, and in his closing address to the jury it is apparent that the prosecuting attorney urged his own personal statement to the jury without any qualification whatever, going so far as to state that he knew that the defendant was guilty of taking the money, and yet we find that the court in this case say:

"It is the duty of the public prosecutor to see that the person charged with crime receives a fair trial, so far as it is in his power to afford him one, and it is likewise his duty to use his best endeavor to convict persons guilty of crime; and in the discharge of this duty an active zeal is commendable, yet his methods to procure conviction must be such as accord with the fair and impartial administration of justice; and it is improper for one occupying the position of the prosecuting officer to make a statement to the jury of a fact, as of his own knowledge, which has not been introduced in evidence under the sanction of an oath, relating to the material issues in the case."

*Goings* v. *State,* 24, C. C., N. S., 145, was also cited on behalf of the plaintiff in error. This was a homicide case wherein the prosecuting attorney in his argument to the jury gave to the jury a false impression of the real status of the principal witness for the defense, intimating that said witness had been tried and acquitted of the crime for which Goings was then undergoing trial, all of which was untrue. This was considered by the reviewing court equivalent to a deliberate misstatement of a material matter in the case, and on this account the court set aside the verdict.

We think it will appear that the foregoing cases are not parallel with the case at bar, but wholly different.

While we have already indicated the general trend of opinion on this question by the supreme court of this state, the same question has received the attention of courts in other jurisdictions, cases being cited in the brief of counsel for the defendant

in error, among them, *Fertig* v. *State,* 100 Wis., 301, which was a first degree homicide case wherein it was held:

"It does not transcend the bounds of legitimate argument in a criminal case, for the district attorney, reasoning from the evidence in the case, to say that the accused is guilty of the offense charged. Within the record, the field of legitimate argument is broad enough to permit the prosecuting attorney to say, with the utmost freedom, what the evidence tends to prove, and that it convinces him, and should convince the jurors, of the fact in issue.

"Where evidence strongly tends to prove the fact of guilt, it is not reversible error for the prosecuting attorney to assume the truth of such evidence, and say from it that the accused is what such evidence tends to establish in regard to guilt."

In *People* v. *Hess,* 85 Mich., 128, it was held:

"It is not proper for the prosecuting officer to tell the jury that he *believes* that the respondent is guilty, but he has the right to argue from the testimony the fact of his guilt, and to state to the jury what evidence before them convinces him, and should convince them, of such guilt."

In *State* v. *Beasley,* 84 Iowa, 83, it was held that the statement of the county attorney in his argument to the jury in a criminal cause that he was convinced beyond a reasonable doubt that the defendant was guilty will not entitle the defendant to a new trial.

In 12 Cyc., 580, it is laid down as follows:

"It is reversible error for the prosecuting attorney in his argument to the jury to declare his individual opinion or belief not expressly stated to be

on the evidence that the accused is guilty, or to state that defendant's counsel advised him to plead guilty. He may, however, argue to the jury that the evidence in his opinion shows guilt, or that it convinces him of the guilt of the accused. Such argument will not necessitate the granting of a new trial."

From these authorities we think the recognized rule is that the prosecuting officer may draw his own conclusions based upon the evidence, and in argument he may in a proper way state them to the jury and argue from that standpoint. Now if we have correctly stated the rule, applying such rule, what have we in the case before us? Analyzing what was said, we think it appears that the prosecuting attorney was convinced of the defendant's guilt by the testimony in the case, and that he so stated to the jury. "I say to you that the defendant is guilty, and I believe we have proven him guilty, and I am willing to bear my part of the responsibility whatever the verdict may be!" Is not the opinion here expressed, in effect, that, subject to the action of the jury, the prosecutor believed that the defendant was guilty as shown by the testimony? We think it is. The belief expressed was not personal, but based upon the testimony in the case, and without extending this discussion further we hold the exception not well taken.

4 and 5. The fourth and fifth grounds alleged are that the court erred in the admission and rejection of testimony offered upon the trial. On account of the importance of the case both to the plaintiff in error and the state, we have read and examined the entire bill of exceptions with consid-

erable care, including the rulings of the trial judge arising upon testimony offered during the trial, and we find no substantial ground for complaint by the plaintiff in error, upon either of the grounds alleged. The trial was a lengthy one, and it is apparent that the expert testimony, which embraces the larger part of the voluminous bill of exceptions, was allowed to be given by the professional witnesses at great length. No error is found upon either of these grounds.

6. The sixth ground alleged has already been treated and disposed of under the third ground herein.

7. The seventh ground alleged is "that the verdict was for the state of Ohio when it should have been for the defendant." As already stated, we have read this entire record, and, while there appears to be a sharp conflict between the testimony of the prosecutrix and that of the accused as to the operation in question having been performed by the latter upon the body of the former, as well as a conflict in the testimony of the numerous professional witnesses, it is to be remembered that facts are the property of the jury to determine, and when so determined, under proper instructions of the trial court, the verdict of the jury should be upheld, unless the same is not sustained by the evidence, or is clearly against the weight of the evidence. Here there was testimony before the jury supporting the contention of both the state and the defense, and the credibility of the witnesses and the weight to be given to their testimony was for the jury. Commenting on the conflict of evidence in a criminal

case, Judge Peck, in *Breese* v. *State,* 12 Ohio St., 146, 156, said:

"The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credibility and effect of the testimony, and we ought, therefore, to hesitate before disturbing a verdict, rendered by a jury and confirmed by a court, possessing such advantages, merely because, there is an apparent conflict in the testimony."

And the court in the syllabus of that case held that "a judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

Applying the rule of law above stated to the evidence presented in this case, we find no sufficient ground to warrant our interfering with the verdict rendered.

8. The eighth ground alleged is that "the court erred in refusing to grant a new trial to the defendant below." This covers the several grounds already disposed of, including exception No. 9, as well as the exception to the action of the court below in giving the state's request No. 1 (p. 283, record) in charge to the jury before argument, which was as follows:

"Though you are not to convict the defendant upon the uncorroborated testimony of Maybelle Henderson, it is not necessary that the crime charged be proved independently of the testimony of said Maybelle Henderson, or that the testimony of Maybelle Henderson be corroborated in every

particular; but it is only necessary that there be circumstantial or direct testimony in addition to the testimony of Maybelle Henderson tending to connect the defendant with the crime charged and to prove some of the material facts testified to by Maybelle Henderson."

Written requests to be submitted to the jury by the court before argument in a civil case are specially authorized under subdivision 5 of Section 11447, General Code, which is as follows:

"When the evidence is concluded, either party may present written instructions to the court on matters of law, and request them to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced."

And subdivision 5 of Section 13675, General Code, which relates to criminal procedure, provides:

"When the evidence is concluded, either party may request instructions to the jury on the points of law, which shall be given or refused by the court; such instructions shall be reduced to writing if either party request it."

The only difference we see in these two sections is that under the first section requests may be submitted in writing, while under the second, if requests are submitted, they shall be submitted in writing only on request. Here it appears that the requests both for the state and defense were submitted at the conclusion of the evidence and that no request was made that such requests so submitted be in writing; nor does it appear that request was made that the charge of the court to the jury be in writing.

That the instruction given on behalf of the state contains the law as announced by our supreme court in the case of *State* v. *Robinson,* 83 Ohio St., 136, and *State* v. *Lehr,* 97 Ohio St., 280, and the law applicable to the case before us, admits of no question in our judgment.

9. The ninth ground alleged is that "the court erred in its charge to the jury." Without here reviewing said charge at any length, suffice it to say that we have examined it, and in our judgment it contains a correct and impartial statement of the law as applied to the case presented. After treating of the general nature of the offense charged, it takes up and describes an accomplice under the section of the statute involved, cautioning the jury against conviction in this class of cases without corroboration of the testimony of the prosecutrix as to some or all of the material facts necessary to establish the crime charged. Commenting on the necessity of either direct or circumstantial evidence being clearly shown before the jury are authorized to convict, the learned trial judge says, on page 298 of the record:

"Before you can convict the defendant in this case the evidence, whether direct or circumstantial, or both, must be so clear and convincing as to exclude from the minds of the jury all reasonable doubt of the defendant's guilt. Each and every circumstance and fact from which an inference is sought to be drawn against the defendant must be proved beyond the existence of a reasonable doubt before such inference can be legitimately drawn."

Taken all in all, we regard said charge as unexceptionable and free from prejudicial error.

The claim made on behalf of plaintiff in error that said charge on page 297 of the record is open to criticism, where said court instructed the jury that they must find that the testimony of the prosecutrix is corroborated as showing the truth of her statement, we can not assent to. Such charge is in harmony with the rule laid down in both the *Robinson* and *Lehr cases* already cited, and we think the proposition stated, and as stated, is sound law. In this connection it was argued that the testimony of the prosecutrix lacked corroboration, even assuming that the jury had been properly instructed in the respect mentioned. As was said by Judge Summers, speaking for the court, on page 143 of the *Robinson case* cited:

"It is not necessary that the crime charged be proven independently of the testimony of the accomplice, or that the testimony of the accomplice be corroborated in every particular in order that it may be said to be corroborated, but only that there be circumstantial evidence, or testimony of some witness other than the accomplice, tending to connect the defendant with the crime charged and to prove some of the material facts testified to by the accomplice."

Here the testimony of Charlotte Henderson (pp. 12-13, record) was that after she saw the plaintiff in error at her home on Tuesday, April 16, 1918, the day of his first call at the Henderson home, her sister Maybelle was up and about and in health when she (Charlotte) left the house to go to the laundry, and about a half hour afterward, and after her return to her home, she found her sister upstairs in bed and the plaintiff in error still in the

house, and that her sister remained in bed the following day and off and on for several days thereafter. The witnesses, Mrs. Creighton, who was living in the Henderson home, and Mrs. Schauer, a neighbor, also testified (pp. 58-66, record) that Maybelle had been about the house and in health until Tuesday, April 16, when she was taken ill and went to bed. And the witness, P. D. Howell, testified (pp. 93-96, record) that the plaintiff in error stated to him at the sheriff's office that Charlotte Henderson on the occasion of his first call at the Henderson home was about to leave the house and go down street and did so leave, and that he was at the house when she returned, as Charlotte also testified. It was the province of the jury to consider and analyze the testimony of these witnesses as to whether or not said witnesses in any manner corroborated the testimony of Maybelle Henderson. It is sufficient to say that this court finds that the testimony of said witnesses affords corroboration of her testimony.

Nor are we of the opinion that said charge is open to the objection made with reference to the question of venue. The indictment charged that the act was committed in Stark county, Ohio, which was read to and thereby formed a part of said court's charge to the jury, and which fact was testified to upon the trial by both Maybelle and Charlotte Henderson. We fail to discover how any prejudicial error could possibly result from this fact.

And it was also claimed that there was a fatal variance between the name of Maybelle Henderson as averred in the indictment, and her true name as

shown during the trial, and that said court erred in
not calling attention to the fact in its said charge.
Maybelle Henderson testified that her name was
Maybelle Henderson, that she is and was known
and recognized by that name and by none other,
and that Charlotte Henderson was her sister.
Under the liberal provisions of the Code, we find
no legal justification for the court below in depart-
ing in this instance from what has become a well-
settled rule in the administration of criminal law.

10. Under the tenth ground of error it was
urged on behalf of the plaintiff in error that the
verdict as returned by the jury was irregular in
form and should not have been received because it
contained a recommendation of mercy. The issue
tendered by the indictment was whether or not the
plaintiff in error was or was not guilty of the of-
fense therein charged, and the verdict was as
follows:

"We, the jury impaneled and sworn to well and
truly try and true deliverance make between the
state of Ohio and the prisoner at the bar, Charles
C. Jones, do find the defendant guilty as he stands
charged in the indictment and recommend the
mercy of the court."

Was said verdict responsive to the issue? True
it contained a recommendation to mercy as stated,
but the verdict was guilty as charged. Did the
recommendations to mercy in any wise affect the
validity of the verdict? Was it not a valid verdict
without the recommendation made which was not
included in the instructions of the trial court? We
think it was, and the recommendation made was
surplusage only and is to be treated as such. Per-

haps the best and most satisfactory statement of
the law on this subject is to be found in 38 Cyc.,
pages 1890 and 1891, where it is said:

"Verdicts are to have reasonable intendment, and
surplusage or immaterial findings may be rejected
in construing them. Thus, if the verdict finds the
issue and something more, the latter part of the
finding will be rejected as surplusage, and judg-
ment rendered independently of the unnecessary
matter, there being nothing to show that the jury
reasoned falsely. And a verdict will not be in-
validated merely because the jury, through their
foreman, immediately after the rendition of the
verdict expressed their opinion as to the merits of
the case, such opinion not being at variance with
the verdict, or made an award concerning costs, or,
the cause being submitted to the jury on special
issues alone, they return a general verdict there-
with, and so much of the verdict as relates to facts
admitted by the pleadings may be stricken out. All
these matters will be treated as surplusage, and
judgment rendered on the valid part of the verdict,
and it is not fatal that the verdict is not technically
accurate if the court can see how it should be cor-
rected."

Under the rule herein cited, we hold that the ver-
dict was responsive to the indictment and that the
recommendation to mercy is to be treated as mere
surplusage.

Upon the whole case we are of the opinion that
the plaintiff in error had a fair trial, that his rights
were properly safeguarded by the rulings of the
trial court upon all questions arising during the
trial, and by said court in its charge to the jury,

and that the verdict of the jury is sustained by the evidence and the law.

The judgment of the court of common pleas will be affirmed and said cause will be remanded to said court for execution of sentence.

*Judgment affirmed.*

HOUCK and PATTERSON, JJ., concur.