Hamilton, J.
The plaintiff, Edward J. Harth, as a taxpayer of the city of Cincinnati, Hamilton county, Ohio, on the 23d day of January, 1920, in writing, requested the city solicitor of Cincinnati to file proceedings in a court of competent jurisdiction to enjoin the defendants from proceeding further under the resolutions of the city council of Cincinnati, passed November 18, 1919, declaring the necessity of requiring the Cincinnati Street Railway Company and the Cincinnati Traction Company to renew- and replace rails, etc., along Freeman avenue, under the ordinances of the city of Cincinnati passed November 25, 1919, and December 23, 1919, being ordinance No. 344-1919 and ordinance No. 388-1919, and to enjoin the city auditor from delivering to the trustees of the sinking fund of the city of Cincinnati the assessment bonds for the improvement of Freeman avenue by the construction of rails, ties, roadbed and' tracks, authorized under ordinance No. 388-1919, in the sum of $60,800, which the board of sinking fund trustees had agreed to purchase.
The solicitor refused to bring the action requested, and the plaintiff as such taxpayer of said city brought the action on behalf of the city in the superior court of Cincinnati for purposes as stated *83 in the above request to the city solicitor, and, by the petition, challenged the constitutionality of the statute of the state of Ohio passed April 17, 1919, found in 108 Ohio Laws, part 1, pages 215 to 2l8, inclusive, which is the authority for the ordinances and resolutions above referred to.
The defendants filed demurrers to the petition on the ground that the petition did not state facts sufficient to constitute a cause of action against them. The court below sustained the demurrers to the petition, and, the plaintiff not desiring to plead further, judgment was entered in favor of the defendants and the petition was dismissed. Thereupon, the plaintiff appealed the case to this court.
The question for determination involves the constitutionality of supplementary Sections 3812-2 and 3812-3, General Code of Ohio, passed April 17, 1919, and found in 108 Ohio Laws, pt. 1, 215.
In substance, this statute provides that where a municipality finds it necessary to improve a street by paving, repaving or resurfacing, and in said street there are located railroad rails, ties, roadbed or tracks of a street railway company, which rails, ties, roadbed or tracks have become worn out or defective, and, upon notice, the street railway company fails or refuses to renew, replace or reconstruct the rails, ties, roadbed or tracks in accordance with the plans and specifications furnished by the municipality, the municipality may proceed to make such reconstruction, and assess the costs thereof against said railway company; and, upon failure of the company to pay the assessment of the cost in cash, the municipality may, by ordi *84 nance, provide for the payment of said assessment in not to exceed ten annual installments with interest thereon, and bonds of the city may be issued in anticipation of collection of said installments. It is further provided that for any unpaid installments due after the expiration of the company’s franchise the company shall not be liable, unless it continues to use the track or tracks after such franchise has terminated.
Council of the city of Cincinnati has proceeded under this statute by legislation to the point of issuing and delivering bonds of the city of Cincinnati in the sum of $60,800, the estimated cost of the labor and material for replacing the rails, ties and tracks of the street railway company on Freeman avenue, Cincinnati, and the bonds have been accepted by the sinking fund trustees of the city, but delivery thereof has not been made.
The petition asks for an injunction against the delivery of the bonds and against further proceeding under and by virtue of said statutes and ordinances relating thereto.
Section 6, Article VIII of the Constitution of Ohio, provides:
“No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation or association.”
The question for determination is: Does the statute authorize a municipality to raise money for, or loan its credit to or in aid of a street railway *85 company or companies? If so, it necessarily contravenes Section 6, Article VIII of the Constitution of Ohio, and the statute and all proceedings thereunder would be invalid.
It is urged in defense of the statute that the purpose of the statute is to enable the municipality, while the street is undergoing improvement, to place the tracks, rails, etc., of the street railway company in good condition, thereby avoiding the frequent tearing up or damage to the street after the improvement is made, and that by doing the work all at one time better results are obtained.
However laudable the motive may be it is not within the province of the court to consider the wisdom or lauda'bility of a purpose, and these considerations can have nothing to do with the authority of a municipality to loan its credit, if it does so. “The constitution is the superior law and the ultimate criterion. The court’s sole duty is to enforce it.” State, ex rel., v. Cincinnati St. Ry. Co., 97 Ohio St., 283, 309.
Stripped of all verbiage and considered from the standpoint of legal interpretation only, we find this situation: Under authority of the statute in question the city notified the street railway company that on certain streets under improvement its rails, ties, tracks, etc., were worn out and defective; that the city had made all necessary surveys and estimates of the cost of replacing these tracks, rails and ties, both for labor and material; that if the railway company did not within the time named in the ordinance furnish the material and labor to replace the tracks, rails, ties, etc., the city would proceed to contract on its own responsibility to *86 have this material furnished and work done; that when completed it would be the property of the railway company and the company would be given an opportunity to pay the cost thereof in cash, but if it did not do so the city would permit it to pay for the same in ten equal annual installments; that to raise the initial money to pay the costs of the construction to the contractor the city would issue its bonds, pledging the full faith and credit of the city to the payment of the bonds; and that the city would take a lien on all the property of the company to secure the payment of the installments as they should become due.
In effect the city further said to the street railway company that in case its franchise expired before all installments were paid it would be relieved from the further payment of any installments unless it continued to use the tracks after the franchise expired.
Under what guise or analysis of facts can it be claimed that this is not a furnishing of money or loaning of the credit of the city? It is not a part of the street improvement. If it were, this cost could be assessed upon the abutting property.
The assertion that it would give long life to the street by preventing the street car company from tearing up the tracks or laying defective materials only argues an excuse for the violation of an express inhibition of the constitution.
It is urged that the proceeding is authorized by the police power possessed by the municipality, but police power is only aúthorized for the benefit of the health, morals, and, perhaps, in some instances, *87 safety of the people. Certainly the replacing of worn out rails and ties of the railway company can in no wise be construed as affecting the public health or morals of the community. The question of police power has no place in the consideration of this case.
If the statute in question were to be upheld as not violating the provisions of the constitution, then a statute providing that a municipality may at the time of the improvement of the street relay new gas pipes, new conduits, new water mains, if the water system is privately owned, and the issuing of bonds under such circumstances, would likewise be constitutional. And, if a municipality may do all these things under the present statute, or similar statutes, then it becomes at once apparent that the city may be furnishing the money or loaning its credit to the maintenance of all public utilities. This illustration is suggested to show where such statutes might lead, and brings the proposition to the very groundwork of the reason of the constitutional inhibition.
In the case of Taylor v. Commissioners of Ross County, 23 Ohio St., 22, at page 83, the court says:
“Where public credit or money is furnished, to be used in part construction of a work, which, under the statute authorizing its construction, must be completed, if completed at all, by other parties out of their own means, who are to own or have the beneficial control and management of the work when completed, the public money or credit thus used, can only be regarded, within the meaning of the constitutional provision in question, as furnished for, or in aid of such parties.”
*88 While the main question in that case was a joint transaction, which is prohibited, the principle applying to the instant case is clearly stated. In this case the city is advancing the money to the contractor, and issuing its bonds, pledging the full faith and credit of the city to their payment, and when the work is completed the ownership is absolutely in the street railway company. The mandate of the constitution is that such aids shall never be authorized.
While it may not at first be apparent that the statute under consideration manifests an intent to authorize the municipality to raise money or to loan its credit directly, examination and reflection show that it does so indirectly. It is axiomatic that what the general assembly is prohibited from doing directly, it has no power to do indirectly. Taylor v. Commissioners, supra, and Wyscaver et al. v. Atkinson et al., 37 Ohio St., 80.
The assessments contemplated and the bonds sought to. be issued are not assessments for street improvements, but the proceeding is an attempt to assess or issue bonds of the city for the payment of the work and material for replacing, relaying and repairing worn out and defective rails, ties and tracks, the private property of the street railway company. This we hold to be raising money for or loaning its credit to the street railway company, which is prohibited by Section 6, Article VIII of the Constitution of Ohio. We, therefore, hold that supplementary Sections 3812-2 and 3812-3 of the General Code of Ohio (108 Ohio Laws, pt. 1, 215), passed April 17, 1919, contravene Section 6, Article VIII of the Constitution of Ohio, and are *89 therefore invalid, and that all proceedings conducted by the city under and by virtue of the authority contained in said statutes are void.
A perpetual injunction will be granted.

Perpetual injunction granted.

Shohl, P. ]., concurs.