NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2945
_____

ERIC VON SCHLICHTEN,
Appellant

v.

VINCENT MOONEY, Superintendent, SCI Coal Township, sued in their individual
capacities; DWIGHT DROS, Records Supervisor, SCI Coal Township
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-16-cv-01473)
Magistrate Judge: Honorable Martin C. Carlson
_____

Argued April 30, 2019

Before: RESTREPO, ROTH, and FISHER, *Circuit Judges*.

(Filed: August 8, 2019)

Stephen D. Brown
Roger A. Dixon [ARGUED]
Monica Gorny
Dechert
Room 2025
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104
        *Counsel for Appellant*


Josh Shapiro, Attorney General
J. Bart DeLone, Chief Deputy Attorney General

Howard G. Hopkirk
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

Kemal A. Mericli [ARGUED]
Office of Attorney General of Pennsylvania
1251 Waterfront Place
Pittsburgh, PA 15222
        *Counsel for Appellees*

_____

OPINION*
_____

FISHER, *Circuit Judge*.

Eric Von Schlichten claims that his right to be free from cruel and unusual punishment was violated when he was imprisoned beyond his maximum release date. He places the responsibility for this error on defendant Dwight Dros, the prison's records supervisor. The District Court granted summary judgment for Dros. We will affirm.

I.

The facts of this case begin with the sentence computation procedures used by the Pennsylvania Department of Corrections (DOC). The DOC's Central Sentence Computation Unit (CSCU) calculates the sentence for each new prisoner on a form called

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

a 16E. The CSCU bases its calculation on the court commitment form, called a DC-300B, which comes from the sentencing court[1] and is the document the county uses to communicate the inmate's sentence to the DOC. When a court orders credit to be given for time served, "[t]he date range or the number of days has to be a part of the order."[2] CSCU staff do not independently determine the amount of credit. If an inmate questions his time-served computation, the CSCU directs him to contact his attorney or the court.

All paperwork related to an inmate's sentence is kept in a file, which may also contain other documents. An inmate's file is maintained in the records department of the institution where he is incarcerated.

Defendant Dros worked at the CSCU and then became the Records Supervisor at SCI-Coal Township. He testified that the goal of sentence computation is to effectuate the judge's sentence. Denise Wood, who oversees the CSCU, testified similarly that "the whole name of the game here is . . . to do what the judge wants."[3] Dros's and Wood's testimony is consistent with Pennsylvania sentencing law.[4]

Plaintiff Von Schlichten, who has autism and limited communication abilities, was

---

[1] 42 Pa. Cons. Stat. Ann. § 9764(a), (b).
[2] App. 221.
[3] App. 229.
[4] *See, e.g.*, *McCray v. Pa. Dep't of Corr.*, 872 A.2d 1127, 1133 (Pa. 2005) (DOC "is an executive branch agency that is charged with faithfully implementing sentences imposed by the courts"; DOC was correct in not computing plaintiff's time-served credit because the "judge did not order credit for time served and the [DOC] is without authority to alter sentencing conditions").

incarcerated in Northampton County Jail from 2010 to 2013 in connection with charges of indecent exposure and open lewdness. In September 2013, Judge Emil Giordano of the Northampton County Court of Common Pleas sentenced Von Schlichten to one to five years in a state correctional institution, with credit for time served.

Von Schlichten was transferred into the state correctional system, and Northampton County sent 94 pages of documents to the DOC, which were put in his file. The head of the CSCU testified how the sentence would have been calculated. Out of all the file documents, the ones needed to compute the sentence were (1) the DC-300B, (2) the written order from the Northampton County clerk of court showing Von Schlichten's sentence, and (3) the order signed by Judge Giordano stating that the written order reflects the sentence of the court. The DC-300B listed the credit for time served as February 11, 2013, to September 6, 2013. The CSCU gave Von Schlichten credit for that time and, on his Form 16E, entered a maximum release date of February 11, 2018.

Von Schlichten's mother, Diana Von Schlichten, believed her son's release date was incorrect, which, as we will recount, turned out to be true. However, Ms. Von Schlichten mistakenly thought he was "maxed out" before he ever entered the state correctional system.[5] Ms. Von Schlichten communicated frequently with officials at SCI-Coal Township, but according to the superintendent's secretary, she did not inquire about

---

[5] For reasons alluded to in the record (but not entirely clarified by it), Ms. Von Schlichten believed that the order at the heart of this case, the September 2013 sentencing order, was not a "legitimate order." App. 688.

her son's release date or the length of his sentence; rather, her consistent theme was that, due to his disability, he should not be in prison.

Dros spoke with Ms. Von Schlichten once on the phone. He remembered her saying that her son did not belong in prison and should not have been there. Ms. Von Schlichten testified that she was directed to Dros because she was "trying to sort out the timeframe that [her son] was being held."[6] She recalled Dros asking if she had contacted the judge and telling her "that would be where [she] would go."[7]

By early 2015, Von Schlichten's criminal defense attorney, Brian Lawser, came to believe that Von Schlichten was not receiving proper time-served credit. Lawser requested a hearing before Judge Giordano, which resulted in the judge issuing a one-sentence order (the "April 17 order") that stated: "Eric VonSchlichten [sic] is to receive credit for all time served in Northampton County towards his sentence."[8]

The order was received at SCI-Coal Township. Dros did not know who saw it before it was put in Von Schlichten's file, but he explained he would have done with it: "I'd look at the document. I would actually look at the [file], review the documents that are already in there, making sure that whatever credit was awarded is applied. And that's apparently what happened."[9] Dros explained why Von Schlichten's release date did not

---

[6] App. 691.
[7] App. 691-92.
[8] App. 894.
[9] App. 442.

5

change: "[T]here's no action to take because the judge did not include any additional—or any dates regarding credit. He just said credit for time served. And, . . . as far as I can see, [Von Schlichten] did receive that."[10]

When Dros was pressed on whether he should have followed up with Judge Giordano after receiving the April 17 order, he emphasized that his department's "duties are strictly defined as far as what we should do and what we shouldn't do."[11] He believed it was the inmate's lawyer's responsibility to follow up with the judge and make sure necessary information was transmitted. Dros testified that his department "did the job . . . [it was] supposed to do" within the parameters of DOC policy, and that "[t]here was nothing else indicating differently that the inmate should have been awarded additional credit."[12]

By May 2015, Von Schlichten still had not been released. His attorney, Lawser, served a subpoena on SCI-Coal Township requesting records related to his sentence computation. Then, in July, Lawser requested a conference with Judge Giordano and drafted a detailed order that listed the dates Von Schlichten had been incarcerated in the county jail. Judge Giordano signed a revised version of the order (the "July 31 order"). It was three pages long and directed specifically that Von Schlichten "is entitled to credit

---

[10] App. 442-43. The head of the CSCU testified, similarly, that the April 17 order "doesn't tell me to do anything. This says credit for all time served. What is that credit?" App. 214.
[11] App. 444.
[12] App. 444.

toward his current sentences and shall receive credit toward his current sentences for the following time periods: 1) January 22, 2010 through January 28, 2010; and, 2) March 24, 2010 to the present day."[13]

Dros received the July 31 order on August 10. That same day, he forwarded the order to CSCU for expedited review. The staff worked as quickly as they could in order to confirm that Von Schlichten was past his maximum release date. They wanted to release Von Schlichten the same day, but he needed a bus ride and no buses were coming until the morning. Dros testified that he acted quickly because it is "important to get an inmate out on the correct day."[14]

Von Schlichten was released the next day, August 11, 2015. He had been held 147 days, or more than four and a half months, past his release date.

Von Schlichten filed a complaint under 42 U.S.C. § 1983, alleging that Dros had violated his Eighth Amendment rights by causing him to be held beyond his release date.[15] After discovery, Dros filed a summary judgment motion, which the District Court granted. Von Schlichten appeals.

---

[13] App. 94.

[14] App. 441. At his deposition, Dros testified to his belief that the July 31, 2015 order incorrectly awarded Von Schlichten duplicate credit for time served. Nevertheless, Dros followed the order because "we just apply what was given to us . . . [W]e don't decide what's credit or what's not." App. 413.

[15] Dros was initially one of several defendants; the others are no longer part of the case due to an amendment of the complaint and a voluntary dismissal.

II.[16]

The District Court granted summary judgment on two independent bases: that there is no triable issue on the Eighth Amendment claim and that there is no genuine dispute that Dros is entitled to qualified immunity. Von Schlichten argues that the District Court violated the summary judgment standard because there is a genuine issue of material fact on his Eighth Amendment claim, and he also argues that Dros should not receive the benefit of qualified immunity. We conclude there was no error on the Eighth Amendment issue, so we do not reach the qualified immunity question.

"To establish a valid claim under § 1983, a claimant must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."[17] There is no dispute that Dros was acting under color of state law.[18] We must decide whether there is a genuine factual dispute regarding the violation of a constitutional right.

"Subjecting a prisoner to detention beyond the termination of his sentence has

---

[16] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343; we have jurisdiction under 28 U.S.C. § 1291. Our review of a grant of summary judgment is de novo, and we apply the same standard as the District Court. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). We view the facts in the light most favorable to Von Schlichten and affirm if there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(a).

[17] *Robb v. City of Phila.*, 733 F.2d 286, 290-91 (3d Cir. 1984).

[18] *West v. Atkins*, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity. . . .").

been held to violate the [E]ighth [A]mendment's proscription against cruel and usual punishment."[19] In an excessive-confinement case, the plaintiff must demonstrate: (1) that the official "had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted," (2) "that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight," and (3) "a causal connection between the official's response to the problem and the infliction of the unjustified detention."[20] The District Court concluded that there is no genuine issue of material fact with regard to the first or second prongs: Dros did not know of Von Schlichten's problem, nor was he deliberately indifferent.[21]

*Sample* is illuminating with regard to both prongs. There, we affirmed a judgment for an inmate on his claim against the prison official who was responsible for computing sentences.[22] The inmate had explained to the official that "his life sentence had been vacated and that he 'should be out of jail.'"[23] Although the official concluded the inmate had "a bona fide problem" that "deserved treatment as a 'rush' inquiry," he did nothing further after checking with the sentencing judge and being told that the problem was out

---

[19] *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993).

[20] *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989).

[21] A plaintiff must demonstrate all three prongs, *see id.*, so a failure to show a genuine factual issue on any one prong means we need not reach the others. However, because the District Court analyzed two of the three prongs, we will do the same.

[22] *Id.*

[23] *Id.* at 1104.

of the judge's control.[24] The official did not follow then-applicable regulations, which required him to promptly inform the attorney general's office about the issue and create a file with a calendar reminder "to ensure that [the problem did] not go unaddressed."[25] The inmate ultimately was released nine months after he should have been.[26]

We held that the officer was "deliberately indifferent to the known and substantial risk" of an Eighth Amendment violation because he believed the inmate's inquiry might be meritorious and needed to be clarified, believed he was the inmate's only source of help, and yet failed to follow up on the problem.[27] The official's deliberate indifference was also shown by the fact that he violated DOC regulations and failed to even inform the inmate about what other steps he might take to help himself.[28]

Unlike the *Sample* defendant, Dros did not know of any potentially meritorious problem that needed to be clarified. Before receiving the detailed July 31 order, Dros had two potential sources of information: the one-sentence April 17 order and the phone call with Von Schlichten's mother. Uncontroverted record facts—the deposition testimony of Dros and the head of the CSCU—show that the April 17 order did not provide information that would have alerted them to a problem with Von Schlichten's sentence. Von Schlichten's mother's phone call also fails to create a genuine dispute about Dros's

---

[24] *Id.* at 1105, 1111.
[25] *Id.* at 1111.
[26] *Id.* at 1102-03.
[27] *Id.* at 1111.
[28] *Id.*

knowledge. Given her mistaken belief about her son's release date, she would not have provided accurate information informing Dros of a problem.

Dros is also unlike the *Sample* defendant with regard to deliberate indifference: Dros informed Ms. Von Schlichten that she could contact the judge, and he knew he was not Von Schlichten's only source of help. Further, Dros did not violate procedures, as the *Sample* defendant did. Indeed, the procedures did not permit Dros to recalculate the sentence based on the April 17 order.

Von Schlichten's effort to frame the District Court's decision as an erroneous application of the summary judgment standard is unconvincing. Von Schlichten asserts, for example, that the April 17 order was "very clear and precise" because it provided that Von Schlichten "was to receive credit for *all* time he had served."[29] He ignores the extensive record facts that a court order is neither clear nor actionable if it does not specify the dates or number of days for which credit is to be given.

Von Schlichten's argument turns, to a great extent, on his assertion that when Dros received the April 17 order, he should have looked at all the documents in the file—many of which, Von Schlichten contends, show his correct time-served dates. However, two of the documents he cites (a letter from the Northampton County Jail and a presentence report) are not used for sentence computation. Other documents (orders from the clerk of court) are from 2011 and therefore, on their face, would not concern the sentence at issue

---

[29] Appellant's Br. 22.

here, which was imposed in 2013.

Von Schlichten argues that the significance of the July 31 order is a disputed fact, but we disagree. No reasonable juror could dispute that Dros's reaction to the July 31 order shows that once he had clear and complete information, he was not deliberately indifferent but was ready and willing to act quickly to correct the problem.

We also disagree with Von Schlichten's assertion that the District Court relied on "irrelevant" factors, namely, the "systemic failures" that led to the excessive confinement. Having thoroughly studied the record, the District Court explained both what did not lead to Von Schlichten's prolonged detention (deliberate indifference on Dros's part) and what did (systemic communication failures). Discussing both sides of the coin was not error.

There is deliberate indifference where an official is "put on notice and then simply refuse[s] to investigate a prisoner's claim of sentence miscalculation."[30] This case is not like that, even when we view the facts most favorably to Von Schlichten. The District Court did not err in granting summary judgment.

III.

For the foregoing reasons, we will affirm.

---

[30] *Moore*, 986 F.2d at 686 (citing *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990)).

12